IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER BUTLER,** | : | |
| Plaintiff | : | No. 1:23-cv-01295 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **FEDEX SUPPLY CHAIN, INC.,** | : | |
| Defendant | : | |

## MEMORANDUM

Before the Court is Defendant FedEx Supply Chain, Inc. ("Defendant")'s "Unopposed Motion for Leave to File under Seal Materials from Public Access" (Doc. No. 51), along with its brief in support (Doc. No. 58-1), which responds to this Court's November 25, 2024 Order to Show Cause (Doc. No. 53) directing Defendant to show cause as to why the documents it filed provisionally under seal[1] in connection with its motion for summary judgment should remain sealed pursuant to the requirements of In re Avandia Marketing, Sales Practices and Products Liability Litigation, 924 F.3d 662 (3d Cir. 2019) ("Avandia") governing the sealing of materials filed in connection with a summary judgment motion. For the reasons that follow, the Court will grant the motion insofar as the Court will permit Defendant to file a redacted version of Exhibits U, V, W, X, and PP (Doc. Nos. 57-1 through 57-5) and temporarily retain Docket Numbers 57-1 through 57-5 under seal.

**I.   BACKGROUND**[2]

Plaintiff Christopher Butler ("Plaintiff") began working for Defendant on June 15, 2015.

---

[1] Defendant initially filed the sealed documents with its other summary judgment exhibits and thus not under seal. See (Doc. No. 53 (directing Defendant to refile under seal the exhibits it currently seeks to have sealed)).

[2] The following factual allegations are taken from Plaintiff's complaint. (Doc. No. 1.)

(Doc. No. 1 ¶ 16.)  At the time of Plaintiff's termination in 2021, he was an Outbound Operations Supervisor under the supervision of Outbound Operations Manager Peg Hill ("Hill").  (Id. ¶ 17.)  Of the employees reporting to Hill, Plaintiff was one of the only male employees and the only black employee.  (Id. ¶¶ 20, 21.)  Hill operated under an Outbound Assistant General Manager who worked under General Manager Brant Curtis ("Curtis").  (Id. ¶¶ 18, 19.)  Around February 2020, Plaintiff informed Hill that he had "hemorrhoids, which might require surgery."  (Id. ¶ 22.)  Hill responded that she hoped "his surgery would be before 'peak' season . . . [around] mid-October".  (Id. ¶ 23.)  Around March 2020, Plaintiff received approval for intermittent Family and Medical Leave Act ("FMLA") leave, which allowed him to leave work if he was in pain due to the hemorrhoids.  (Id. ¶¶ 24, 25.)  Hill commented on Plaintiff's intermittent leave saying: "she was not happy when he had to leave work due to hemorrhoids"; "he needed to get his medical issues under control"; "his intermittent FMLA leave was becoming more and more frequent"; and "every time he took intermittent FMLA leave, he was letting the team down."  (Id. ¶¶ 26–29.)

On or around April 14, 2021, Plaintiff was placed on suspension for approximately five (5) days without receiving an explanation from Defendant for the suspension.  (Id. ¶¶ 30, 31.)  After his suspension, Plaintiff complained to Curtis that he was facing "race, sex, and disability discrimination and FMLA retaliation."  (Id. ¶ 32.)  On or around May 10, 2021, Plaintiff informed Hill that he needed to undergo surgery to remove his hemorrhoids, which required up to three (3) months for the surgery and recovery.  (Id. ¶ 33.)  Hill told Plaintiff that "she was 'sure' it would not take that long."  (Id.)  On or about June 1, 2021, Plaintiff was placed on a ten-day (10) suspension and received no explanation as to why he was suspended.  (Id. ¶¶ 34, 35.)  Plaintiff complained to Curtis again of race, sex, and disability discrimination and FMLA

retaliation. (Id. ¶ 36.) Plaintiff commenced his medical leave of absence for his hemorrhoid surgery on July 5, 2021, and returned from it on September 1, 2021. (Id. ¶¶ 38–40.)

After his medical leave of absence, Plaintiff learned that other Operations supervisors had received a bonus but he had not. (Id. ¶ 41.) On September 4, 2021, he called Defendant's anonymous hotline and complained again that he was being treated differently based on his race, sex, disability, and FMLA leave. (Id. ¶¶ 42, 43.) Plaintiff received a call on September 5, 2021, from Human Resource Manager Gary Young ("Young") who informed him that he had received his anonymous complaint and would investigate it. (Id. ¶ 44.)

On September 9, 2021, Hill placed Plaintiff on a performance improvement plan ("PIP"). (Id. ¶ 45.) A little over a month later, on October 11, 2021, Hill told Plaintiff he had successfully completed his PIP. (Id. ¶ 47.) On October 19, 2021, Plaintiff learned from Young that his complaints were deemed unsubstantiated and that there was no evidence of discrimination. (Id. ¶ 48.) Later that day, Plaintiff attended a meeting with Hill, Curtis, HR, and another woman, at which they terminated his employment. (Id. ¶ 49.) Defendant's reason for the termination of Plaintiff's employment was that "he had failed the PIP." (Id. ¶ 50.)

Plaintiff filed his complaint on April 13, 2023. In his complaint, Plaintiff asserts claims of disparate treatment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Rights Act, 43 Pa. Cons. Stat. § 951 et seq. (Id. ¶¶ 58, 65, 73, 78.) Plaintiff also asserts a claim of retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (Id. ¶ 87.)

After discovery closed, and in accordance with the Court's Order dated October 2, 2024

(Doc. No. 44), on November 15, 2024, Defendant filed a motion for summary judgment (Doc. No. 48), a brief in support of the motion (Doc. No. 50), and a statement of facts and exhibits in support of the motion (Doc. No. 49). Defendant filed an unopposed motion for leave to file under seal Exhibits U, V, W, X, and PP on the same day. (Doc. No. 51.)

On November 25, 2024, the Court issued an Order striking all of Defendant's exhibits with leave to refile them and directed Defendant to file Exhibits U, V, W, X, and PP under seal while the Court considers Defendant's motion for leave to file under seal. (Doc. No. 53.) Defendant refiled its exhibits (Doc. No. 54) and refiled Exhibits U,V, W, X, and PP under seal (Doc. Nos. 57-1 through 57-5). Exhibits U, V, and W are sexual harassment reports from Defendant's anonymous human resources reporting hotline that contain information on the allegations, the date of receipt, the location of the incident, and a summary of the incident. (Doc. Nos. 57-1 through 57-3.) Exhibits X and PP are the final reports from the internal investigation of the sexual harassment reports and Plaintiff's reports of race, sex, and disability discrimination and FMLA retaliation. (Doc. Nos. 57-4, 57-5.)

In the same November 25, 2024 Order, the Court directed Defendant to show cause as to why the exhibits submitted provisionally under seal should not be made a part of the publicly available docket in this matter under the standards applicable to judicial records articulated by the United States Court of Appeals for the Third Circuit ("Third Circuit") in Avandia. (Doc. No. 53.) In its November 25, 2024 Order, the Court referenced Avandia's discussion of the common law right of access to judicial records as well as the First Amendment right of access, which "requires a much higher showing than the common law right of access before a judicial proceeding can be sealed." See Avandia, 924 F.3d at 673 (quoting In re Cendant Corp., 260 F.3d 183, 198 n.13 (3d Cir. 2001)). That Order directed the Clerk of Court to maintain the documents

4

filed by Defendant (Doc. Nos. 57-1 through 57-5), provisionally under seal until further order of the Court. On December 6, 2024, Defendant filed its response to the Court's November 25, 2024 Order. (Doc. Nos. 58, 58-1.) Accordingly, Defendant's motion for leave to file exhibits under seal is ripe for resolution.

## II.     LEGAL STANDARD

The Third Circuit's opinion in Avandia confirmed its earlier holding that a common law right of access applies to judicial records, stating that there exists a "presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." See Avandia, 924 F.3d at 672 (citing In re Cendant Corp., 260 F.3d at 192). The Third Circuit reiterated that "documents filed in connection with a motion for summary judgment are judicial records." See id. (citing Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 660–62 (3d Cir. 1991)). However, Avandia recognized that "the common law right of access is 'not absolute'" and stated that "[t]he party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'" See id. (quoting Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986)). The Third Circuit held that "[t]he movant must show 'that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.'" See id. (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted)).

The Third Circuit then detailed the nature of a district court's obligation in determining whether a litigant has met its burden to show that the presumptive right of access has been overcome, stating:

> [T]he District Court must articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure,

>and provide[] an opportunity for interested third parties to be heard. In delineating the injury to be prevented, specificity is essential. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient. [C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants. To that end, the District Court must conduct[] a document-by-document review of the contents of the challenged documents.

See id. at 672–73 (cleaned up).

The Third Circuit in Avandia discussed not only the common law right of access to judicial records but also the First Amendment right of access to judicial proceedings, which "requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." See Avandia, 924 F.3d at 673 (quoting In re Cendant Corp., 260 F.3d at 198 n.13). "It remains an open question in this Circuit whether the First Amendment right of access applies to records of summary judgment proceedings." Id. The majority in Avandia declined to address the applicability of the First Amendment right of access to summary judgment materials under the circumstances of that case, where the litigant had not met its burden to overcome the presumptive common law right of access to judicial records. See id. at 679–80. However, as to the First Amendment right of access, the court stated that "[w]e use a two-prong test to assess whether the right of access attaches: (1) the experience prong asks 'whether the place and process have historically been open to the press'; and (2) the logic prong evaluates 'whether public access plays a significant positive role in the functioning of the particular process in question.'" See id. at 673 (quoting N. Jersey Media Grp. Inc. v. United States, 836 F.3d 421, 429 (3d Cir. 2016)). If both prongs are met, the First Amendment right of access presumptively applies, and this presumption can be rebutted "only if [the party seeking closure is] able to demonstrate 'an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"

6

See id. (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1073 (3d Cir. 1984)). In declining to consider the applicability of the First Amendment right of access under the circumstances presented to it in Avandia,[3] the Court of Appeals directed that "[i]f on remand the District Court concludes that any of the sealed documents merits continued confidentiality under the common law right of access, then the Court should also consider the parties' arguments regarding the First Amendment right of public access." See Avandia, 924 F.3d at 680.

## III.   DISCUSSION

As noted supra, Defendant seeks to maintain under seal five exhibits submitted in support of its motion for summary judgment—Docket Numbers 57-1 ("Exhibit U"), 57-2 ("Exhibit V"), 57-3 ("Exhibit W"), 57-4 ("Exhibit X"), and 57-5 ("Exhibit PP"). In its response to the Court's November 25, 2024 Order, Defendant explains that all of these exhibits contain personal identifying information ("PII"), such as the speculated names of the anonymous reporters and nonparty witnesses, job titles, and Plaintiff's outside activities and social media engagement. (Doc. No. 58-1 at 3–4, 6.) As anonymous reports of sexual harassment containing the PII of the reporters, Defendant argues that Exhibits U, V, and W, consist of the kind of information that courts will protect, and that disclosure would impair the privacy of the individuals who came forward with complaints of sexual harassment and the expectation of privacy with regard to Defendant's anonymous alert line. (Id. at 3–5.) As to Exhibits X and PP, Defendant also asserts that those reports of internal investigations contain PII of nonparty witnesses, and similarly

---

[3] Judge Restrepo, in an opinion concurring in part and dissenting in part, concluded that the First Amendment right of public access extends to summary judgment materials. See id. at 681–84. The Second and Fourth Circuits have held that the First Amendment right of public access extends to summary judgment materials. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 124 (2d Cir. 2006); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988).

consist of the kind of information that courts will protect.  (Id. at 6.)  Defendant maintains that disclosure would "violate the privacy interests" of nonparties and "damage the integrity of future investigations by chilling participation."  (Id.)  The Court addresses initially Exhibits U, V, and W together before addressing Exhibits X and PP.

### A.    Exhibits U, V, and W

Defendant's Exhibits U, V, and W are reports describing sexual harassment to Defendant's anonymous internal reporting system.  All three documents contain the date of the anonymous complaint, the location of the harassment, the reporter's relationship to Defendant, next steps of the investigator, and an investigation summary and assessment of the incident including speculation as to who lodged the anonymous complaint. (Doc. Nos. 57-1 at 2–4; 57-2 at 2–4; 57-3 at 2–4.)  Additionally, all three exhibits detail allegations of sexually harassing comments and conduct such as comments about the reporters' bodies and Plaintiff's sexual exploits.  (Doc. Nos. 57-1 at 3; 57-2 at 3; 57-3 at 3, 4.)

Upon review of Exhibits U, V, and W, the Court finds that Defendant has met its burden to demonstrate that its interest in secrecy outweighs the presumption of public access to summary judgment materials.  First, Defendant has shown that the PII of nonparty alleged sexual harassment victims contained in Exhibits U, V, and W is "the kind of information that courts will protect."  See Avandia, 924 F.3d at 672 (quoting Miller v. Indiana Hosp., 16 F.3d 549, 551(3d Cir. 1994)).  Courts across the Third Circuit have withheld disclosure of PII.  See, e.g., McCowan v. City of Phila., No. 19-cv-03326, 2021 WL 3737204, at *3 (E.D. Pa. Aug. 24, 2021) ("[T]he [PII] of nonparties is precisely the kind of information that courts will protect." (internal quotation and citation omitted)); Mine Safety Appliances Co. v. N. River Ins. Co., 73 F. Supp. 3d 544, 586 (W.D. Pa. 2014) (permitting the redaction of PII from judicial documents submitted

under seal); Bah v. Apple Inc., No. 20-cv-15018, 2021 WL 4272829, at *2 (D.N.J. Sept. 21, 2021) (allowing the redaction of PII because the public has no interest in it).

Second, Defendant has also shown that disclosure "will work a clearly defined and serious injury." See Avandia, 924 F.3d at 672.  Defendant indicates that disclosure will violate and "impair the privacy of the individuals who come forward with complaints of sexual harassment" and "impair the expectation of privacy with regard to [its] [anonymous] alert line." (Doc. No. 58-1 at 6.)  The reporters have a strong interest in maintaining the privacy of their names and their anonymously made complaints to their employer.  That interest is made all the stronger by the sexual nature of the allegations in the reports and the reporters' statuses as nonparties to this litigation.  See McCowan, 2021 WL 3737204, *3 (finding the privacy interest of nonparties in their PII and memoranda that contain their allegations of gender discrimination and "highly offensive comments, treatment, and touching" as compelling).  Moreover, serious injury to the expectation of privacy related to Defendant's anonymous alert line is also compelling.  The purpose of the alert line is to allow employees to access a safe and anonymous way to report workplace harassment and infractions.  Disclosure of the names and private information of alert line reporters would not only defeat the purpose of an anonymous tip system but also damage the trust future reporters may have in the expectation of privacy.  Although the public has an interest in access to judicial records, that interest does not extend to PII, let alone the PII of nonparty sexual harassment reporters.  See Bah, 2021 WL 4272829, at *3 (citing Platt v. Freedom Mortg. Corp., No. 10-cv-00968, 2013 WL 6499252, at *10 (D.N.J. Dec. 11, 2013)) (finding the public does not have an interest in PII).  Because Defendant seeks to protect the PII of nonparties, particularly reporters of sexual harassment, the Court finds that Defendant has overcome the common law presumption of public access such that the Court will permit

Defendant to file redacted versions of Exhibits U, V, and W that remove all references to nonparty PII.

The Court concludes that it is more appropriate to require Defendant to redact the nonparty PII as opposed to retaining the entirety of Exhibits U, V, and W under seal, as requested by Defendant. See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd., No. 20-cv-04660, 2023 WL 1100995, at *7 (E.D. Pa. Jan. 30, 2023) (finding that proposed redactions that are limited in scope are preferable to wholesale sealing); see also McCowan, 2021 WL 3737204, at *4 (E.D. Pa. Aug. 24, 2021) (stating that "redaction only marginally affects the public's right to access materials filed in relation to judicial proceedings"). "Therefore, where possible, parties should propose redactions, rather than placing a whole document under seal." Del Nero v. NCO Fin. Sys., Inc., No. 21-cv-04823, 2021 WL 2375892, at *2 (E.D. Pa. June 10, 2021). Accordingly, the Court will permit Defendant the opportunity to file on the Court's docket a version of these internal reports redacted to remove nonparty PII while retaining Docket Numbers 57-1 through 57-5 temporarily under seal on the docket of this matter.[4]

---

[4] The Court notes that Avandia indicates that, if a district court finds that any documents merit continued sealing under the common law right of access, district courts "should also consider the parties' arguments regarding the First Amendment right of public access." See Avandia, 924 F.3d at 680. Despite this Court's reference to the First Amendment right of public access in its November 25, 2024 Order, Defendant, in its response to that Order, does not appear to address the First Amendment right of public access. In the absence of arguments on this issue, the Court is not inclined to address the applicability of the First Amendment right of access in this context. However, even if the Court assumes that the First Amendment right of access attaches to Exhibits U, V, and W, the Court concludes that the burden to overcome that access is met here in light of the injury that would result from disclosure and the Court's narrowly tailored approach of directing redaction over wholesale sealing. The Court is guided by determinations in this circuit that PII is protected from public dissemination. See, e.g., McCowan, 2021 WL 3737204, at *4 (holding that protection of nonparties' PII is a compelling privacy interest that outweighs the public's interest in disclosure).

B.      Exhibits X and PP

Defendant's Exhibits X and PP are internal investigation reports generated in response to the sexual harassment complaints contained in Exhibits U, V, and W and Plaintiff's reports of race, gender, and disability discrimination and FMLA retaliation, respectively.  (Doc. Nos. 57-4, 57-5.)  Exhibit X contains the names, positions, departments, and telephone numbers of the nonparty witnesses related to the investigation into allegations of sexual harassment committed by Plaintiff.  (Doc. No. 57-4 at 2–3.)  It also contains summaries of interviews with witnesses and a summary of the facts and findings of the investigator.  (Id. at 5–10.)  Exhibit PP contains similar information: i.e., names, positions, departments, and telephone numbers of Plaintiff and witnesses related to the allegations of race, gender, and disability discrimination and FMLA retaliation; summaries of interviews; and a summary of the facts and findings of the investigator.  (Doc. No. 57-5.)

Upon review of Exhibits X and PP, the Court finds that Defendant has met its burden to demonstrate that its interest in secrecy outweighs the presumption of public access to summary judgment materials.  The Court agrees with Defendant that the PII of nonparties identified in Defendant's internal investigation reports and the reports themselves are "the kind of information that courts will protect."  See Avandia, 924 F.3d at 672 (quoting Miller, 16 F.3d at 551).  As explained above, courts typically protect the PII of nonparties.  See McCowan, 2021 WL 3737204, at *3; Mine Safety Appliances Co., 73 F. Supp. 3d at 586; Bah, 2021 WL 4272829, at *3 (allowing the redaction of PII because the public has no interest in it).  As to the internal investigation reports, courts have also protected those documents from disclosure.  See Jorjani v. New Jersey Inst. of Tech., No. 18-cv-11693, 2022 WL 1811304, at *8 (D.N.J. June 2, 2022) (sealing a confidential report that details an outside firm's investigation and findings into the

11

plaintiff who was an employee of the defendant); see also Yoho v. Bank of New York Mellon Corp., No. 17-cv-00917, 2019 WL 13318345, at *1 (W.D. Pa. June 28, 2019) (determining that an internal investigation report may be sealed if a movant can show it "involved confidential or highly explicit subject matter").

Further, Defendant has identified "a clearly defined and serious injury" that disclosure of Exhibits X and PP would cause—specifically, the injury to the reporters and named individuals who held expectations of privacy regarding their personal and highly sensitive information. Defendant also contends that disclosure would chill participation in internal investigations. The Court agrees that the reporters, the named nonparty individuals, and Defendant's future internal investigations would be seriously injured by disclosure. As explained supra, the reporters and other nonparties provided their accounts to the internal investigator in confidence and with the expectation of privacy. Because Exhibits X and PP detail the names, job titles, and telephone numbers of those nonparties, disclosure of them would expose that PII in contravention of the nonparties' expectation of privacy. The result of the loss of those privacy expectations is "likely to discourage other [] employees from complaining in the future." See McCowan, 2021 WL 3737204, at *4. The chilling of employee participation in internal investigations and the need to protect the PII of nonparties outweigh the public's interest in disclosure. Accordingly, the Court finds that Defendant has met its burden to demonstrate that its interest in secrecy outweighs the presumption of public access to summary judgment materials such that the Court will permit Defendant to file a redacted version of Exhibits X and PP that removes all references to nonparty PII.[5]

---

[5] As with Exhibits U, V, and W, Defendant does not address the First Amendment right of public access standard in its Memorandum of Law in Support of its Motion for Leave to File under Seal, which responds to the Court's November 25, 2024 Order to Show Cause. See (Doc.

IV.     CONCLUSION

For all of the foregoing reasons, the Court will grant Defendant's motion insofar as the Court will temporarily retain under seal Defendant's Exhibits U, V, W, X, and PP (Doc. Nos. 57-1 through 57-5) while permitting Defendant to file a redacted version of those exhibits. An appropriate Order follows.

---

No. 58-1). However, even if the Court assumes that the First Amendment right of access applies to Exhibits X and PP, it concludes that the burden to overcome that access would be met here in light of the specific injury to the nonparties' privacy and expectation of privacy regarding the confidential information disclosed to Defendant and in view of the Court's narrowly-tailored approach of directing Defendant to redact the PII from Exhibits X and PP instead of permitting the entire exhibit to be sealed from public view. See McCowan, 2021 WL 3737204, at *4 (holding that nonparty PII, when redacted, is a compelling privacy interest that outweighs the public's interest in disclosure under the First Amendment right to public access).